**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ROSHAN JOHN and JEMMA JOHN,**

Plaintiffs,

v.

**SCRIPTO-TOKAI CORPORATION and THE TOKAI CORPORATION,**

Defendants.

Civil No. 00-2472 (ADM/SRN)

**ORDER**

---

APPEARANCES

Jeffrey M. Baill, Esq. and Steven Theesfeld, Esq., for Plaintiffs.

Gary Gordon, Esq., for Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on April 16, 2002, on Plaintiffs' Motion to Use Depositions at Trial (Doc. No. 35), which was withdrawn by Plaintiffs at the hearing, and Plaintiffs' Motion to Amend the Complaint (Doc. No. 37). The case has been referred to the undersigned for resolution of pre-trial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. BACKGROUND FACTS

This products liability litigation arises out of a fire that was allegedly started by Plaintiffs' three year-old son on February 5, 2000. Defendant Tokai Corporation designed the utility lighter at issue in this matter during 1984-85. Defendant Scripto-Tokai Corporation began distributing the utility lighter, commonly known as the "Aim 'n Flame," in 1985. (Ashley Aff. ¶ 3.) The Aim 'n Flame is a product designed to create a flame, and is

FILED MAY 30 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

particularly useful in extending a flame to hard-to-reach locations, such as gas stoves, candles, lanterns, fireplaces, and the like. (Ashley Aff. ¶ 3.) Since its introduction into the United States, the Aim 'n Flame has always included a written warning that the product should be kept out of the reach of children. (Ashley Aff. ¶ 4.)

In 1996 or 1997, Plaintiffs purchased an Aim 'n Flame utility lighter that was designed and manufactured by Defendants. Normally, Plaintiffs stored the lighter in their garage on a shelf inaccessible to their son. However, they brought the lighter into the house to light birthday candles, and decided to leave the lighter inside the house, instead of returning it to the garage. (Kohls Aff. Ex. A at 9-13.) In the ensuing six weeks, Plaintiffs' son allegedly climbed on a kitchen cabinet, retrieved the utility lighter, and began playing with the Aim 'n Flame in his parents' bedroom closet. (Kohls Aff. Ex. B at 20-22.)

On the morning of February 5, 2000, Plaintiff Jemma John was on the main floor of her split-entry home when she decided to check on her son. (Kohls Aff. Ex. B at 33.) When Mrs. John arrived at the doorway to her bedroom, she noticed a fire in her closet. (Kohls Aff. Ex. B. at 10.) She quickly left the house with her children and called for help. (Kohls Aff. Ex. B. at 10.) As a result of the fire, Plaintiffs' home sustained damage. (Compl. ¶ 27.)

## II. PLAINTIFFS' MOTION TO AMEND TO ADD A CLAIM FOR PUNITIVE DAMAGES

### A. Pleading Requirements for Punitive Damages in Minnesota

"In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the Laws of the State of Minnesota, must generally conform to the requisites of Minnesota Statutes Sections 549.191 and 549.20." Ulrich v. City of Crosby, 848 F. Supp. 861, 866 (D. Minn. 1994); Zeelan Indus. Inc. v. deZeeuw, 706 F. Supp. 702, 705 (D. Minn. 1989); Kuehn v. Shelcore, Inc., 686 F. Supp. 233, 235 (D. Minn. 1988);

Fournier v. Marigold Foods, Inc., 678 F. Supp. 1420, 1422. "As recognized by our Court, the Minnesota Legislature adopted, in 1986, the pleading requirements of Section 549.191 in order to deter certain practices in the presentment of punitive damage claims which were thought to be abusive, and in order to deter a perceived insurance crisis." Ulrich, 848 F. Supp. at 866-67. In all instances in which Minn. Stat. § 549.191 applies, a plaintiff may not assert a punitive damage claim in the complaint in the first instance, but rather must seek leave of court to amend the pleading pursuant to that section.

Under Minn. Stat. § 549.191, a motion for leave to amend a complaint to add a claim for punitive damages must set forth prima facie evidence in support of the motion, must allege the "applicable legal basis under section 549.20 or other law for awarding punitive damages in the action," and must be supported by one or more affidavits showing the factual basis for the claim. The "applicable legal basis" provides that "punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a).

Thus, at the amendment stage, the supporting affidavits provided by Plaintiff must present a prima facie showing of clear and convincing evidence that the acts of Defendant exhibit a deliberate disregard for the rights or safety of others. Olson v. Snap Prods., Inc., 29 F. Supp. 2d 1027, 1037 (D. Minn. 1998) (citing Swanlund v. Shimano Indus. Corp., Ltd., 459 N.W.2d 151, 154 (Minn. Ct. App. 1990). Prima facie evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary 579 (7th ed. 1999); McKenzie v. Northern States Power Co., 440 N.W.2d 183, 184 (Minn. Ct. App. 1989) ("prima facie evidence is that evidence which, if unrebutted,

would support a judgment in that party's favor"); Swanlund, 459 N.W.2d at 154. Under the prima facie standard, "the Court makes no credibility rulings, nor does the Court consider any challenge, by cross-examination or otherwise, to the Plaintiff's proof." Ulrich, 848 F. Supp. at 867. Further, the motion should be thoroughly examined, "without considering evidence submitted in opposition." Northwest Airlines, Inc. v. American Airlines, Inc., 870 F. Supp. 1499, 1503 (D. Minn. 1994) (citing Swanlund, 459 N.W.2d at 154).

Minnesota Statute§ 549.20, subd. 1(b) provides:

> A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

"Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others, the 'clear and convincing' standard would be satisfied." Ulrich, 848 F. Supp. at 868.

When a plaintiff moves to add a punitive damage claim, the Court is essentially required "to direct a portion of the verdict against the plaintiff if the evidence of [deliberate disregard] is insufficient." Swanlund, 459 N.W.2d at 155. Thus, as in ruling on a motion for directed verdict, the Court must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences from the evidence. See Abbett v. County of St. Louis, 474 N.W.2d 431, 433 (Minn. Ct. App. 1991).

**B. Plaintiffs' Proof to Support Punitive Damages**

Plaintiffs have put forth numerous affidavits purporting to set forth "clear and convincing" evidence that Defendants have exhibited deliberate disregard for their rights and safety. Plaintiffs assert that Defendants knew of the existence of child-play fires, that they continuously represented to their vendors that the Aim 'n Flame was child resistant, that Defendants opposed attempts by the Consumer Product Safety Commission ("CPSC") to regulate utility lighters, and that Defendants delayed their implementation of a child-resistant utility lighter. In support of these contentions, Plaintiffs have supplied the Court with the affidavits of Tracy A. Lapel, Steven L. Theesfeld, and Dr. Tarald O. Kvalseth. Attached to the aforementioned affidavits are numerous exhibits, most of which are in English.[1]

Defendants argue that Plaintiffs have not set forth "clear and convincing" admissible evidence that Defendants have exhibited deliberate disregard for Plaintiffs' rights or safety. The Court agrees. After a thorough review of Plaintiffs' exhibits, the Court finds no evidence that Defendants opposed attempts by the CPSC to regulate utility lighters, nor that Defendants delayed implementation of a child-resistant utility lighter.

In support of Plaintiffs' contention that Defendants knew of child-play fires, the Court finds several references in Plaintiffs' affidavits and exhibits that Defendants did indeed know of such fires. Plaintiffs have asserted that Defendants had knowledge that as many as fifty-three child-play fires had occurred over a period of eight years. (Lapel Aff. Ex. C at 1.) Assuming this fact to be true, it alone does not establish that Defendants acted with a deliberate disregard for Plaintiffs' rights or safety. Nowhere in Plaintiffs' evidence do Plaintiffs show how many of the fifty-three child-play fires were started by use of Defendants' product. Plaintiffs also fail to demonstrate why fifty-three child-play fires

[1] The Court notes that the 26-page Exhibit P to the Lapel Affidavit is entirely in Japanese.

resulting from the sales of thousands of utility lighters provides a "high probability of injury." Furthermore, much of Plaintiffs' evidence is in the form of Defendants' internal memoranda discussing how to respond to the CPSC's request for comments on a proposed regulation of utility lighters.[2] This evidence simply does not reach the "clear and convincing" standard required because it is not sufficient to permit a jury to conclude with "high probability" that Defendants' actions were with "deliberate disregard for the rights or safety of others." Ulrich, 848 F. Supp. at 868.

Plaintiffs also argue that Defendants' 1994 retail account brochure entitled "Child Resistant Lighter Buyer's Guide" establishes Defendants' deliberate disregard for Plaintiffs' safety by advertising to Defendants' retail accounts that the Aim 'n Flame was child resistant. First, Plaintiffs have provided no evidence that Plaintiffs believed the Aim 'n Flame to be child-resistant. However, even assuming that this marketing brochure was misleading, a jury could not conclude based on this document that there was a "high probability" that Defendants acted with "deliberate disregard" for the rights or safety of others. Id. Thus, Plaintiffs have not proven, by "clear and convincing" evidence, that Defendants acted with deliberate disregard for their rights or safety. As such, Plaintiffs are not entitled to plead a claim for punitive damages under Minn. Stat. § 549.20. Therefore, Plaintiffs' motion to amend to add a claim for punitive damages is denied.

## III. PLAINTIFFS' MOTION TO AMEND TO ADD CONSUMER PROTECTION CLAIMS

### A. Standard for Amending the Pleadings

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings; leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

[2] In these memoranda, Defendants discuss sales figures, current safety features, and possible costs associated with implementing new child-resistance features.

Courts have taken a liberal position for leave to amend, and such motions should usually be granted absent good reason for a denial. See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989). Good reasons for rejecting a proposed amendment are "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment . . . ." Id. citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Inclusion of a claim or defense based on facts already known or available to both parties ordinarily does not prejudice the non-movant. See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) (citation omitted). Finally, a party's motion to amend should be denied only if it asserts "clearly frivolous claims or defenses." Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994) (quoting Buder, 644 F.2d at 695).

**B. Consumer Protection Claims**

Plaintiffs seek to amend the Complaint to add causes of action based on alleged violations of Minn. Stat. § 325F.69 of the Consumer Fraud Act, and Minn. Stat. § 325D.13 of the Unlawful Trade Practices Act. The proposed amendments are based upon Defendants' 1994 brochure entitled "Child Resistant Lighter Buyer's Guide." In that four-page brochure, purportedly sent to Defendants' retail accounts, Defendants highlighted their product line of lighters for the retailers. (Lapel Aff. Ex. E.) Plaintiffs claim that because the Aim 'n Flame is listed in a brochure entitled "Child Resistant," that they may therefore make a claim for consumer fraud under this statute.

Minnesota Statute § 325F.69 provides in relevant part:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise,

> whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn. Stat. § 325F.69, subd. 1 (2002). Minnesota Statute § 325D.13 provides that "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." Plaintiffs argue that the Court should allow their amendments because Defendants' marketing brochure allegedly misrepresented the Aim 'n Flame as child resistant, with the intent that others rely on that misrepresentation.

Defendants argue, however, that Plaintiffs' consumer protection claims are futile, and therefore their motion should be denied. Defendants contend that these claims are based upon a single document that Plaintiffs never saw, and that was never released to consumers. They further argue that the Minnesota Private Attorney General Statute does not allow for a private cause of action in this case.

**1. Consumer Protection Claims**

Plaintiffs, in order to sustain a cause of action under the Consumer Fraud Act, Minn. Stat. § 325F.69, must establish that Defendants: (1) made a misrepresentation, and (2) intended for others to rely on that misrepresentation. Minnesota's Consumer Fraud Act was adopted with the intent to "protect consumers from unlawful and fraudulent trade practices in the marketplace." Ly v. Nystrom, 615 N.W.2d 302, 308 (Minn. 2000). The Act is remedial, and should be liberally construed in favor of protecting consumers. Id. (citations omitted).

However, Plaintiffs "retain the burden of proving a causal link or nexus between the alleged misconduct and the claimed harm." Group Health, Inc. v. Philip Morris, Inc., 188 F. Supp. 2d 1122, 1126 (D. Minn. 2002). In the Group Health matter, the plaintiffs argued that causation may be presumed based on the defendants' expenditure of substantial advertising

funds, and alternatively that actual deception of the public may be presumed by those defendants' false advertising. See id. The court specifically rejected both of those arguments, noting that those plaintiffs' damages could not "be caused by a violation [of the consumer fraud statutes] without reliance on the statements or conduct alleged to violate the statutes. Therefore in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement." Id. at 1127 (quoting Group Health, Inc. v. Philip Morris, Inc., 621 N.W.2d 2, 13 (Minn. 2001)) (emphasis in original). Thus, Plaintiffs bear the burden of proving that a causal nexus or link exists between Defendants' 1994 brochure sent to their retailers, and Plaintiffs' claimed damages. See id.

Plaintiffs, relying on one 1994 brochure, and case law largely from other jurisdictions, allege they "need only plead that defendant engaged in conduct prohibited by the statutes and that the Plaintiff was damaged thereby." (Pls.' Mem. Supp. Mot. Amend Compl. at 11 (citing Group Health, Inc., 621 N.W.2d at 12).) That court went on to say, however, that "[a]lthough we conclude that the legislature has eliminated the requirement of pleading and proving traditional common law reliance as an element of a statutory misrepresentation in sales action, the parties are correct that causation remains an element of such a claim." Group Health, Inc., 621 N.W.2d at 13.

Plaintiffs assert, without more, that the existence of the 1994 brochure establishes a causal nexus between Defendants' alleged misrepresentation and Plaintiffs' damages. The Court finds this argument unpersuasive, and contravenes the express holdings in the Group Health cases. Plaintiffs have not alleged or come forth with any evidence that Defendants intended to deceive or mislead consumers, nor that Plaintiffs were ever led to believe that the Aim 'n Flame they purchased was child-resistant. Plaintiffs have also come forth with no

evidence of a causal nexus between the brochure and their alleged damages. Therefore, because the Court finds that Plaintiffs' proposed amendments would be futile, Plaintiffs' motion to amend must be denied.

**2. The Private Attorney General Statute**

Defendants further argue that Plaintiffs' amendments are futile because the Private AG statute does not encompass their causes of action. Because the Court determined above that Plaintiffs' amendments are substantively futile, the Court need not address this argument, and declines to do so.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend (Doc. No. 37) is **DENIED.**

Dated: May 30, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

## *Featured Speakers Include:*

<u>District of Minnesota</u>

**Judge David S. Doty**

**Judge Donovan W. Frank**

**Judge Paul A. Magnuson**

**Judge Ann D. Montgomery**

**Judge John R. Tunheim**

**Chief Magistrate Judge Jonathan Lebedoff**

**Magistrate Judge Arthur J. Boylan**

<u>United States Bankruptcy Court</u>
<u>District of Minnesota</u>

**Judge Robert J. Kressel**

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

**The Minnesota Chapter of the Federal Bar Association**
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
**PAID**
Minneapolis, MN
Permit No. 2657

**MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION**

**In connection with**
**The Federal Judiciary**

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002**
**8:00 am—5:15 pm**

**Minneapolis Convention Center**
**1301 Second Avenue South**
**Room 208**
**Minneapolis, MN 55402**
**(612) 335-6000**

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome, *Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron, *Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law, *Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office, *Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?, *Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend, *Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How, *Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling -- *Daniel M. Scott (U.S. Federal Public Defenders' Office)*; Response by the Department of Justice -- *Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court, *Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations, *Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

| | |
|---|---|
| ☐ Member | $195.00 |
| ☐ Non-Member | $225.00 |

Name ______________________

Firm/Employer ______________________

Address ______________________

______________________

______________________

Phone ______________________

E-Mail ______________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA (612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building